Good morning, Your Honors. May it please the Court, I'm Richard Seibert for the plaintiff, the Department of Parks and Recreation for the State of California, and also sitting at the table with me is Mr. David Robinson, the Deputy Attorney General of the State of California. Your Honors, the District Court's denial of preliminary injunction should be reversed for three reasons. Number one, the District Court manifestly failed to apply the correct legal standard, which is a fair chance of success or serious questions being raised and the balance of hardships tipping in the State's favor. Instead, the Court repeatedly stated in its order that it was applying a likelihood-of-success standard, and it did not address the balance of hardships at all, which this circuit has held in the Venetia case is the most critical element. The second reason for reversal, Your Honors, is that the District Court comprehensively misstated and misapplied black-letter trademark law. The District Court said that the State had to show a preexisting trademark right at the time it entered into the concession agreement. That is wrong. The District Court said or implied that the concession agreement had to expressly reference intellectual property or expressly be denominated a trademark license to operate as one. That is also wrong. I take it what we have here are two historic houses that are part of a historic park, right? Yes, sir. And whoever occupied those houses back in the early days of California or prior to statehood had a name, and those surnames are now being used for a restaurant with the word restaurant following the surname, right? Who has the proprietary interest in somebody's name, 18-whatever-it-is? There's more to it than that, Judge Beezer, with respect. Originally, yes, you're quite correct. These were people's names. It was the brother of Pio Pico, who was the last Mexican governor of California, and it was Juan Bandini, who was probably the most prominent citizen in San Diego in the early 1800s. But they built these structures, and over the course of time, the structures themselves achieved historical significance. One of them was used as a hotel at one point. In 1968, the State acquired the entire area of Old Town, which is where California was born in 1769. Subsequently, in 1971, it was denominated on the National Federal Registry of Historic Places. And the State commenced operations in 1968 of a state park, including these historic structures, which were pointed out on park brochures, included on park tours. And the district court did find that prior to this concession agreement that these names and these buildings were part of the educational and the touristic and the recreational services that were offered by the State. And so, who owns the names is the State. The State owns them by virtue of their use in connection with these park services, beginning in 1968. We have a lot of things in California. Like, we have the University of Santa Clara, and it's obviously named after Mission Santa Clara. We borrow that name, too, because the church owns the tag of Santa Clara. They tag it to a mission. If the University of Santa Clara uses that name in connection with the provision of goods and services, they would have the right to trademark it. They are educational extensions or services, aren't they? They are, Your Honor. And it may very well be that the University of Santa Clara has trademarked the name in connection with hats and sweatshirts. If there's no risk of confusion, if there's no likelihood of confusion in the public. And they'd have to submit evidence of that, Your Honor. All right. You have a park, and you're using names on houses. The other party is using the names on a restaurant, a location outside the park. What's the confusion? Well, Your Honor, the law in this circuit, and in fact nationally, is that the doctrine of natural expansion. If the expansion into related goods and services would suggest an affiliation with the original user of the mark, then that is confusion. The singular test for trademark infringement is when the public associates a name with source affiliation or sponsorship of goods. They never obtained the mark, did it? It's the State's position that the State did obtain the mark on two bases, Your Honor. Number one, through their use in connection with the operation of a state park from 1968. And number two, through the concession agreement in question here that began in 1971. I looked for restrictions in the agreement. I don't find any. Your Honor, the most explicit ones are contained in the third amendment to the concession agreement in 1981, which, by the way, was four years before Bazar del Mundo applied to register these marks. And that third amendment to the concession agreement comprehends, first of all, specifically refers to the operation of these restaurants by these names. No, in those locations. But it also refers to the — And the duties of the proprietor are to furnish the stoves and the tables and the service and the menus and the signage and all of that. Well, within some limited control of the State, which wasn't very much. Your Honor, with respect, paragraph 10 of the third amendment, which is contained at page 80 of the excerpts of record, specifically refers to Casa de Pico and Casa de Bandini not as historical structures but as restaurants. And it also specifically states that their activities must be approved by the area manager. I respectfully ask the Court to keep in mind this is a somewhat unusual arrangement. This is not your usual license arrangement where your licensor licenses the licensee and the licensee then, you know, goes off and does what they do. No, sir. It's a concession agreement, and concession agreements have the park manager on site. In fact, paragraph 46 of the original concession agreement specifies that there's an area manager for the Department of Parks and Recreation. Can you show me anywhere in any one of those concession agreements where you licensed your supposed trademark to the two restaurants? Not explicitly, Your Honor, but a trademark license may be implied. Really? Yes, Your Honor. A trademark license may be implied. We've cited those cases. It's the Basic v. Rex case, the Nestle case, the Birthright case. You need not use the word license. In fact, perhaps the leading case on this is from this circuit. It's the Edwin K. Williams case. And I apologize, this was not cited by either party in the briefs. And if the Court deems it useful, we'd be pleased to submit a supplemental brief. But may I please give the Court the citation? It's 542 Fed 2nd at page 1059. It's the Edwin K. Williams case from this circuit in 1976. You don't need to specifically mention the word license. You don't even need to specifically reference the controls. The controls themselves may be implied. And what the Edwin K. Williams case, this circuit, and other cases have said is the principle underlying the notion that the key thing to make a trademark license, a trademark license, is quality control by the licensor. The key thing is the ---- Let's talk about ownership. What's the key thing? What is the critical thing for common law trademark ownership? Use. What kind of use? Use either directly or use through a licensee. In this case, we have both bases. We have the use by the State in connection with the Tourist Recreational and Educational Service. Doesn't it have to be commercial use that builds up goodwill in the mark? It does, Your Honor, but that covers a wide waterfront, and that includes, commercial use includes the operation of a State park. The Trademark Manual of Examining Procedure, in fact, has a definition for a park and tourist services. You're not quarreling about a mark for the park. You're quarreling about a mark for a restaurant. But we're ---- You're using the term restaurant. That is correct, Your Honor. the likelihood of confusion with the State park. I respectfully remind the Court, these restaurants have been in Old Town State Park for 34 years. Under this proprietor for how many? Thirty-four years. Yeah. Oh, and I've been there and actually eaten at them several times, so I know exactly what you're talking about when you're talking about the park. And the irreparable harm here to the State is that ---- and there's clear secondary meaning. I mean, people ate in the Casa de Pico restaurant, and there were ---- You established that meaning. Wasn't it the owners of the restaurants? It wasn't the park. Your Honor, it was both, and the participation of the owners of the restaurant was pursuant to license. And they didn't, you know, they didn't do it for nothing. License of buildings, not license of trademark. It is a concession agreement to run a concession including a restaurant. And in exchange for the licensee, Bazaar del Mundo, undertaking that activity, the State delivered on a daily basis boatloads of tourists coming in to visit a State historic park. How do you know they weren't coming in to eat at the restaurant? Well, we don't know that for sure, but we do know that the ---- This is only the preliminary injunction stage. That is true, Your Honors, but I believe that we satisfied the requirements for preliminary injunction showing irreparable harm, showing a fair chance of success, and that there were serious questions of public interest being raised. And the U.S. Supreme Court has said in the Weinberger case, and it's been repeated in other cases, that the public interest is a key consideration here. This is not a standard commercial case. I mean, this is not the Acme widget company. Isn't it really what you want is to give, to somehow have it declared that, you know, that the State owns the trademark to those restaurants so that you can give it to your new concessionaires? No. So they can get the ---- Yeah, right, live off the goodwill that was built up by the restaurant. With respect, Your Honor, absolutely not. First of all, the current concessionaire, the new concessionaire, is not using those names. Certainly not now. And there are no ---- there are no current name ---- current plans to give them those names. The goodwill that was built up in those names, the goodwill that was built up in those names through those operations in yours to the State, in exchange for building up that goodwill, this concessionaire was afforded the opportunity to build and operate restaurants on State property, to have visitors visit a State park. They were required, not out of the goodness of their heart, they were required to spend 2 percent to promote the activities. It was a quid pro quo. And under black letter trademark law, the goodwill in yours to the licensor, to the State that permitted the concession agreement. And what the State really wants, Your Honor, we're not looking for an ultimate determination on the merits at this point. Although, frankly, I do think this case lends itself to summary judgment. But that's not why we're here. What the State wants is not to have its intellectual property rights bleed away during the months this case will take to trial by having people drive around San Diego and all of a sudden they see Casa de Pico or Casa de Bandini in a shopping center in a suburb. Do you really think that people are going to be confused between the restaurants and the State Historic Park? First of all, Your Honor, if you're asking me my personal opinion. Well, I mean, well, no. It's an objective question. The objective question is do you really believe there's a likelihood of confusion between the restaurants and the Historic Park? My answer is yes. I believe that people will think there is some affiliation or sponsorship because those restaurants were on the State Park for so long and because those structures have been in San Diego for almost 200 years. Perhaps more to the point, the only evidence before the district court, and it was unrefuted, was the expert testimony of Mr. Patterson, Robert Patterson, who's got 38 years of experience in the hospitality industry. And he declared that he believed, as an expert, that there would be likelihood of confusion, that there would be questions raised. He said why. He set forth his rationale. He attached the exhibits. And the district court, frankly, disregarded that. Objections were made by Bazar del Mundo to Mr. Patterson's evidence, but those objections were not sustained. It remained in evidence, and it's unrefuted. The only evidence before this district court was that there would be likelihood of confusion. And all we're asking, Your Honor, is that the State not have to take that risk. This case has ramifications and repercussions beyond the immediate operation of Old Town State Historic Park, although goodness knows that's important enough for San Diego. The State has responsibilities under Section 5080 of the Public Resources Code not to give away, not to make a gift of State funds. They also have that responsibility under the California Constitution. That section of the Public Resources Code sets forth very specifically a public interest requirement that the State has to meet. This is not a normal commercial contract. And those ---- But why didn't the State, if the State has all these obligations, why didn't the State act on those obligations a long time ago and trademark its own marks and at least contest the mark of the ---- that belongs to the Bazaar del Mundo? Yeah. Which you didn't do. I have three responses, Your Honor. First of all, under U.S. trademark law, you don't need to. You have a trademark under the common law by virtue of use. Registration merely gives you some tactical and presumption advantages if it comes to litigation. But when they registered the mark after, would you say, four years after the 2001 agreement? Yes, ma'am. Well, you certainly knew that they were registering it then, didn't you? We didn't. The State did not know, Your Honor. There was a public ---- there was constructive notice legally through publication in a fairly obscure publication called the Official Gazette. But there was no actual notice. And moreover, the concession agreement specifically provides in paragraph 46 that the contact for the concessionaire, the licensee, is the area manager for Parks and Recreation who is on site, and it says it's the day-to-day contact. He was never advised. This licensee, this concessionaire, frankly, the circumstances suggest went out of its way not only not to tell the State, but once the marks were registered, to actively conceal any knowledge. They never used a trademark or an R in a circle designation on their menus, their brochures, their websites, even though they did for their other trademarks. When the issue of ownership of intellectual property came up in 2001 at a meeting of State concessionaires with the Department of Parks and Recreation, this concessionaire sent a three-page letter which is referenced in the record in which she vehemently objected to the State's using names as intellectual property, but didn't mention that she had gone off and registered the ones she had. The first time this actually came to the State's knowledge was when this concessionaire lost the bid, and then this concessionaire turned around and basically said, well, you know what? I registered the names, and I didn't tell you, and I'm taking them with me, and I'm going to use them outside of this historic park where California was born for the first time in almost 200 years. And who cares if it's a shopping center? In any event, Your Honors, I would like to reserve some time for rebuttal. But the reasons for ---- It's about out of time. You've got 49 seconds, so. Well, then I'll finish, Your Honors. Number one, the wrong standard was used, and at the very least, the district court should be asked to apply the right standard. Number two, comprehensive misstatement of black letter or trademark law. Number three, ignoring the equities in this situation and the blameworthy conduct of this State concessionaire. If there are any further questions or comments, Your Honors, I'd like to thank you very much for your patience. No, thank you. Thank you. Thank you. May it please the Court, John Brooks on behalf of the defendant Napoli Bustardo Mundo. I'd like to apologize at the outset for my voice, which is quickly fading. I hope that I'm audible to you. You like the USC game? I wish it were that fun. The State is attempting pending trial to take away from Bustardo Mundo valuable trademark rights, which it has built up over the last 20 and 30 years through the investment of time and the investment of over $7 million in advertising and promotion. Those restaurants have become well-known to the public, have established a large following, and have won many awards. Those trademarks, in addition, have become incontestable, which radically reduces the types of challenges that could be asserted against Bustardo Mundo's ownership. I would submit to the Court that there are two clear ways to affirm the decision, one relying upon the deferential standard review to be given at this preliminary injunction stage, and the other, if the Court were to reach the merits issues at all, through the clear framework of the Lanham Act rules that govern permissible challenges to incontestable trademarks. With regard to the standard of review, it is an abuse of discretion standard of review. The plaintiffs simply have not shown that the court below applied the wrong legal standard or made any clear error of interpreting the factual evidence. With regard to the merits analysis, the only two permissible challenges given the incontestable status of the trademarks would be fraud on the patent and trademark office in the application for the trademarks or prior continuous use of the trademark office, continuing from before the date of registration up to the present day. The plaintiffs haven't come close to meeting this burden on either of those points. In fact, it's our position they abandoned the first argument, the fraud argument. It is not outlined in their summary of argument, in their table of contents, and there is no discussion of the standards that guide a fraud on the trademark office type of argument in the plaintiff's papers. With regard to prior continuous use, that argument would come down entirely to this novel and unsupported assertion that the concession agreement, which is silent on intellectual property rights, somehow operated as an intellectual property license such that after 30 years of effort by the defendant, the State can turn around and say, aha, you may not have realized it, but you've been working for our benefit for the last 30 years and you have no goodwill in these marks. That result isn't supported by the evidence, by the law, or by equity. The other points, I believe, have been covered in our papers. I'd be happy to respond to questions. I have one question on irreparable harm. Is your client intending to immediately open restaurants in the shopping center using the, or are you operating restaurants currently under the names? Yes. The current state of the facts that is reflected by the record is that a Casa de Pico restaurant is being operated in the, I believe it's the Grossmont Shopping Center in La Mesa, California. I believe that my client has the intent to operate restaurants under the Casa de Bandini mark as well, is not presently doing so, but is still using the Casa de Bandini marks in advertising and promotion, including on its website. But I would point out that that particular fact is not in the record. Do we have any questions? No. Then this case, Department of Parks and Recreation, State of California v. Pizarro del Nino is submitted.
judges: Beezer, Hall, Wardlaw.